AMERICAN COTTON COMPANY v. FRANK HEIERMAN & BROTHER.

Decided November 30, 1904.

1.—Pleading—Fraudulent Representations.

Allegations of fraudulent representations by defendant held not to constitute mere expressions of opinion but to amount to a statement of facts.

2.—Fraud—Receipt of Property.

One induced to purchase property by fraudulent representations by the vendor and paying freight charges thereon was not required, in order to rescind the trade, to surrender the property until the freight charges had been returned him.

3.—Fraud—Limitation—Written Contract.

Where the right of plaintiffs to recover damages for fraudulent representations on sale of goods depended upon their right to avoid the terms of a written contract because of such fraud, the four years statute of limitation and not the two years applied to their contract.

4.—Sale—False Representations—Knowledge by Purchaser.

Evidence considered and held to require the submission of the question whether plaintiff, suing on account of false representations in a sale, was not precluded from recovery by reason of his knowledge, at the time, that the representations were untrue.

5.—False Representations—Expression of Opinion.

A representation by the agent of the seller of machinery that it could be run by the power already in operation by the purchaser in the business in which it was to be used, being made by an expert examining the machinery, was a statement of fact and not a mere expression of opinion.

6.—Res Adjudicata—Damages—Right to Possession.

A former judgment between the parties which, without passing on the question of the right of one to damages, settled the right of his adversary to the possession of certain property after a named date, while not preventing a subsequent suit for the damages, was conclusive, in such suit, of the right to the property from the date fixed in such former judgment.

Appeal from the District Court of Travis. Tried below before Hon. Geo. Calhoun.

*Eugene Williams,* for appellant.—To entitle appellees to rescind their contract with appellant on the ground that appellant's agents fraudulently represented their engine and boiler power was sufficient and to entitle appellees to recover back the money expended by them under the contract it should have appeared by pleading and proof (1) that the representation, if ever made, was a statement of fact and not an expression of opinion; (2) that within a reasonable time after discovering the representation to have been false and fraudulent appellees repudiated the contract, and (3) that within such reasonable time they tendered back the press and machinery delivered to them under the contract and claimed a rescission thereof. Expressions of opinion not sufficient: Garrett v. Burleson, 25 Texas Sup., 44; Little v. Allen, 56 Texas, 139; Donoho v. Ins. Co., 22 Texas Civ. App., 198; Allen v. Thompson, 2 App. C. C., sec. 106; 14 Am. and Eng. Ency. of Law, 2d

ed., 34, Opinion as to patented machinery: Neidefer v. Chastain, 36 Am. Rep., 198, 71 Ind., 363; Story on Contracts, 510-511, Tender or restoring press to appellant: Garza v. Scott, 24 S. W. Rep., 89; Hunt v. Turner, 9 Texas, 389; Templeton v. Green, 25 S. W. Rep., 1073; Navarro Pub. Co. v. Fishburn, 2 Posey, U. C., 594. Acquiescence: Evans v. Goggan, 5 Texas Civ. App., 131; Crutcher v. Schick, 10 Texas Civ. App., 681; Aultman v. York, 71 Texas, 263; Wells v. Houston, 23 Texas Civ. App., 645; Marshall v. Crawford, 2 Posey U. C., 479; Younger v. Welch, 22 Texas, 427.

If appellees' action be construed to be in tort upon the alleged fraudulent representation that their engine and boiler power was sufficient, it is clearly barred by the statute of limitations of two years.

If it be for recovery of money paid upon even a written contract, whilst a suit to rescind the contract would not be barred until the expiration of four years, the action for recovery of money paid out by reason of fraud inducing it would be barred in two years. Statute of two years bars action for damage based upon the alleged fraudulent representations. Bass v. James, 83 Texas, 110, 111; Walter Wood Machinery Co. v. Hancock, 4 Texas Civ. App., 304; Smith v. Fly, 24 Texas, 345; Mitchell v. Simons, 53 S. W. Rep., 76. Statute of four years bars suit for rescission or action on the contract: Evans v. Goggan, 5 Texas Civ. App., 131; Blount v. Blecker, 13 Texas Civ. App., 230, 35 S. W. Rep., 863.

Representations, if fraudulent, will not be ground for rescission or recovery of money paid or damage sustained where the party claiming to be defrauded believed the representations untrue when made. Bowman v. Carithers, 40 Ind., 90; Pennybacker v. Laidley, 33 W. Va., 624.

The United States Court having decided appellant was entitled to the possession of the press on August 22, 1900, and appellees having deprived appellant of its use until June 16, 1902, the court should not have made appellant's right to recover the value of its use depend upon the finding for appellant by the jury upon the other issues in the case.

The trial court erred in refusing defendant's special charge that "the contract obligated plaintiffs to return the press and other machinery furnished by the defendant to plaintiffs at the termination of the contract pleaded by plaintiffs about April 1, 1900, and if you believe that the plaintiffs about said date upon application therefor by the defendant's agent refused to deliver up possession thereof the jury will return their verdict for the defendant as to its claim against the plaintiffs for the detention thereof during the years 1900-1901 and 1901-1902 and assess its damage as instructed in other paragraphs of the charge." Appellant claimed damages for the detention of the press and machinery for the seasons of 1900-1901 and 1901-1902, that is from August 22, 1900, to June 16, 1902, and as the judgment in the United States Court had made its right to the possession of its press and machinery res judicata for this period the charge quoted in this assignment should have been given, so far as this period was concerned.

Appellant's claim for damages for failure on appellees' part to operate the press during the season of 1899-1900 was in law undisputed,

since the fraud alleged by appellees as an excuse for their not operating it during that time was based upon an alleged representation of opinion, and not a statement of a fact as to the sufficiency of appellees' power to operate the press and other machinery. This raised only a question of law as to the legal effect of said excuse, and as an expression of opinion by appellants agents concerning the sufficiency of appellees' power (if ever made) could not in law be a fraud, such excuse was incompetent to relieve appellees from operating said press and machinery for the contract period of 1899-1900, which with the period from August 22, 1900, to June 15, 1902, practically covers the entire period for which damages arising from the detention of the press and machinery are claimed by appellant.

*John Dowell,* for appellees.—The misrepresentation made was of a material fact, and not a mere expression of opinion.

If the statement made, though in the nature of an opinion, is not the mere expression of such, but is the affirmance of an existing fact material to the transaction and made under such circumstances that the other party may reasonably treat it as a fact and act upon it as such, then the statement clearly becomes an affirmation of fact and may be fraudulent; and especially is this true where one makes a statement about something of which he is supposed to have peculiar information, as, in this case, what machinery or horse power would operate successfully these presses under the conditions offered, appellant · being engaged in business of installing them, and inspecting and passing on the availability and sufficiency of the machinery before making the contract. Mitchell v. Zimmerman, 4 Texas, 75; Newton v. Ganss & Co., 7 Texas Civ. App., 90; Able v. Chandler, 12 Texas, 91.

Appellees repudiated the contract and tendered back the presses, and demanded back their money as soon as could be done under the circumstances and as speedily as required by law.

Appellees having paid out money on the contract, they had the right, the presses having been abandoned and left in their possession by appellant, to hold them until this money was paid, as it was a cause of action against appellant that grew out of and was a part of the same transaction and was incident to and connected with appellant's right to the press. Batts' Civ. Stat., art. 755, p. 339.

The statute of limitations of four instead of two years applies to an action to set aside a contract on the ground of fraud, misrepresentation and deceit. Batts' Civ. Stat., art. 3358, p. 495; Evans v. Goggan, 5 Texas Civ. App., 129; Cooper v. Lee, 75 Texas, 114; Crow v. Groesbeck, 39 S. W. Rep., 1003; Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Texas, 218.

The charge of the court that, if the jury found for the plaintiff on the instructions given, then they should not consider the cross-action of defendant was correct, for appellants had the right in law to hold the press and deliver it upon the payment of the money due them.

The Federal Court not having passed on the claim of appellants to hold possession of the presses until the money paid out by them on the contract was refunded to them, but in its judgment expressly exempted

this right and claim from such, left the same without prejudice, to be thereafter litigated between appellants and appellees.

FISHER, CHIEF JUSTICE.—Appellees, Frank Heierman & Bro., a partnership, residents of Austin, Texas, filed their original petition February 4, 1903, against appellant, American Cotton Company, alleging that on or about January 13, 1899, they were conducting a ginnery at Austin; that about said date agents of appellant conferred with appelles to lease to them a round lap bale cotton press and other machinery, and that appellant represented that the engine and boiler of appellees gave sufficient power to operate appellees' ginnery, as well as said round lap press and machinery of appellant; that relying upon such representation, appellees leased the said press and machinery from appellant under contract, copy of which is set out in appellees' petition, which lease, however is immaterial, except that it obligated appellees to pay the freight on appellant's press and other machinery and to erect the same and furnish all material and labor for such erection; that appellant was obligated to furnish a superintendent to give directions as to how the press and machinery should be installed; that appellees were to promote the proposed business in every way, and to furnish the power required, and sufficient and competent labor to care for and operate the machinery, and to attend to all business obtained without unnecessary delay.

Appellees further alleged that they complied with their part of the agreement and paid items for freight and installation aggregating $619.37, and installed the press and machinery in their gin; that appellant sent its agent to begin the operation of the press and machinery, and that after having been thoroughly tried, the press was a failure, because the power of said engine and boiler was insufficient to operate the press, and especially insufficient to operate the same in a business-like and successful way, or with ordinary efficiency; that this test was made about two days after August 1, 1899; that said press, although properly installed and in working order, could not be operated, and appellant's agent stated to them that the same would work; that said agent left the press and machinery in its place, and did not return; that appellees removed said press and machinery and remodeled their building, thereby expending $28, and incurred expenses in replacing the floor and remodeling the roof $50, and alleging that all of said expenditures were caused by the acts of appellant's agents.

Appellees further alleged that they had ginned and pressed 1,400 square bales of the season of 1899, which would otherwise have been pressed into round bales but for the failure of appellees' engine and boiler power being sufficient, as represented by appellant's agent, thereby causing a loss to appellees of $700, the several sums of damage to appellees being alleged as aggregating over $1,300.

Appellees further alleged that appellant's agents knew that the power of appellees' engine and boiler would not operate the said press and other machinery and ginnery, and that the representations of appellant's agents were fraudulently made to palm off on appellees said

worthless and defective machine, injure them in their business, and perpetrate on them gross injustice and oppression.

Appellees prayed that said contract be adjudged to have been obtained in fraud and without consideration, and that the same be canceled by a proper order and judgment of the court, and that appellees have judgment for the damages done them.

The case was tried on the claim made in appellees' petition that injury had resulted to appellees by reason of alleged false representation that the engine and boiler of appellees gave sufficient power to operate the ginnery of appellees, as well as the press and machinery of appellant.

The appellant's answer contained special exceptions to the plaintiffs' petition on the ground that the cause of action set up by the plaintiffs was barred by the two years statute of limitation, and that the plaintiffs could not rescind by reason of their acquiescence, as appears by averments of the petition, on account of delay in bringing the suit, and that according to the written agreement pleaded by the plaintiffs, they were to furnish a sufficient power to operate the press, and that the representation pleaded by the plaintiffs relied upon for the rescission was a contradiction of the terms of the written agreement. These demurrers were overruled by the trial court.

Appellant answered by general denial and specially interposed the two years statutes of limitation, and that the appellees under the contract were to furnish sufficient engine and boiler power to operate the press and machinery, and could not and were not authorized to rely upon the representations, if any, of the appellant's agent, that the engine and boiler power was sufficient, and after it became known that the power was insufficient, they acquiesced in and ratified the contract; and that if the agent of appellants did make any representations with reference to the power of the engine and boiler to operate the press, that it was a mere expression of an opinion and not a statement of a fact; and alleged that the press furnished was such as required by the contract; and alleged that under the contract the appellees were to operate the press furnished by appellant for the cotton season of 1899-1900, and that they failed to operate the same, whereby the appellant was damaged in the sum of $1,400; and also alleged that the value of the use of the press for the years 1899, 1900, 1901 and 1902, the time that the plaintiffs had possession of the same, was $6,000, which sum the appellant sues for.

The appellant also pleaded that on August 22, 1900, it brought a suit in the United States Circuit Court for the Western District of Texas, at Austin, and recovered possession of the press and machinery furnished to appellees by appellant, and that they were forced to sequester the machinery, and did not get possession thereof until on or about June 1, 1902; that in said judgment the Circuit Court expressly adjudicated that the appellant was entitled to the possession of the press and machinery on and continuously after August 22, 1900, and the appellant alleged that by reason of the detention of the press and machinery from August 22, 1900, until June 1, 1902, the appellees became liable for the value of the use of the press and machinery, and that the right

of possession from that time adjudicated by the judgment in the Federal Court was res adjudicata.

It appears from the charge of the court that the plaintiffs' right to recover was submitted to the jury on the theory of the alleged false representations made by the appellant's agent, that the engine and boiler then in use by appellees in their gin would give ample and sufficient power to operate the press and machinery furnished by the appellant; and in effect instructed the jury that if they found for the plaintiffs upon this issue, then to make no finding upon the items of damages pleaded by the appellant in its cross-action.  This is not the exact language employed by the court in its charge, but it is substantially its effect.  The court then submitted to the jury the elements of damages pleaded by the appellant.

The jury returned a verdict in favor of the appellees for $25, and, under the charge of the court, made no disposition of the issues raised by the appellant's answer.

The first, second, third, fourth, fifth and sixth assignments of error complain of the action of the trial court in overruling the demurrers; and the last assignment complains of the action of the court in refusing to give the charge embracing the same questions raised by the demurrers. We think the demurrers were properly overruled.  The representations pleaded by the plaintiffs were more than a mere expression of opinion. They amounted to a statement of a fact, and the evidence is to that effect.  The evidence of the appellees shows that within a reasonable time after they discovered that the engine and boilers would not operate the press, they notified the appellant, but they retained possession of the press and declined to deliver to the appellant until they were reimbursed the freight charges that they had paid out in order to get possession of the press.  The fraud alleged by the appellees, if true in fact, would authorize them to repudiate the contract and to recover the damages they sustained by reason of the fraud.  They offered to return the press, if they were reimbursed the freight charges which they were required to pay out in order to obtain possession of the press and to put it in operation; and we are inclined to the opinion that if the appellants breached the contract, or induced the appellees to pay out that sum of money by reason of the fraudulent representations alleged, the latter were not required to surrender the press until the freight charges had been paid.  Therefore we think these assignments present no reversible error.

The seventh and eighth assignments of error raise the question that the appellees' cause of action for damages was barred by the two years statute of limitation.  It is contended that the contract, by virtue of its terms, expired more than two years prior to the time that appellees filed their petition in this case; that consequently no rescission was necessary in order for them to recover damages on the facts alleged.  While it is true the action of the plaintiffs is, in its nature, one of deceit, and while it may be admitted that the contention of appellant would, in that class of cases, be correct, but in this case that rule, in view of the terms of the contract, should not be applied.  There is a provision in the contract that bound the appellees to promote the business of pressing cotton in

every way, and they were to furnish the power required and sufficient and competent labor to care for and operate the machinery. The contract by the limitation prescribed by its terms, which provided for its continuance, may have ceased to exist, but this provision, unless controlled or destroyed by the fraud perpetrated upon appellees, would operate as a bar to the recovery of damages against the appellant. The covenant in the agreement that the appellees were required to furnish the power to operate the press stood in the way of a recovery, unless its legal effect was avoided and canceled, on the ground of the fraud alleged. Evans v. Goggan, 5 Texas Civ. App., 129. Therefore, we are of the opinion that the four and not the two years statute of limitation applies to the appellees' cause of action for damages.

In view of the fact that the case will be reversed upon other questions hereafter to be passed upon, while not approving the exact language of the charges set out under the ninth and tenth assignments of error, and the manner in which the questions there raised are presented in the charges, we suggest that upon another trial it will be proper for the court, upon request made by a charge properly framed, to present to the jury for their consideration the questions presented and raised by these charges. The testimony of the appellees tends to show that they were deceived and misled by the representations of the agent of the appellant that the power produced by the engine and boilers then in operation in appellees' gin was sufficient to run the press furnished by the appellant, and that acting upon those representations they entered into the contract and received the press. But there is also evidence of the witness Frank Heierman upon which the issues presented by the special charges set out under the ninth and tenth assignments of error could have been based. He testified: "I did not know the amount of power that would be necessary to operate the press they were offering me. I had an idea that it would take a terrible power, and did not think we could operate it, but was assured we could." There is some evidence tending to show that he was a man of some experience and knowledge with reference to the power of machinery. This evidence was sufficient to raise the issue and is a sufficient basis to have the issue submitted to the jury for their consideration. If the jury should believe that although the appellant's agent falsely represented the power, if Heierman knew that such representations were not true, and that the power could not operate the press, then it is clear that he was not defrauded or deceived, and he would have no basis for the action of damages predicated upon the fraudulent statements.

Before passing those objections urged to the case made by the appellees, we desire to dispose of the question as to the effect of representations made by the agent of appellant, as to whether or not they were mere expressions of opinion or the statement of a fact. It is insisted by appellant that the representations so made were mere expressions of opinion, upon which the appellees could not legally rely as a basis for an action. The evidence of the witnesses of the appellees that testified upon this subject is to the effect that the agent of appellant was informed by the appellees that the latter would not enter into a contract or place the press in their gin unless the machinery of the appellees fur-

nished sufficient power to operate the press. The agent of the appellant, who seems to have been an expert, examined the machinery, and then informed the appellees that it would furnish sufficient power to run and operate the press. There is nothing in the nature of an opinion about this representation. It was the statement of a fact, and it was important and material as an inducement to enter into the contract. The appellant's agent was an expert and was there for the purpose of investigating the machinery, and the appellees had the right to rely upon the truth of his statement, unless, as said before, they knew, or had reason to believe or had good ground to believe, that it was not true. The evidence of the appellant upon this subject does not undertake to explain or qualify the evidence of the appellees upon this subject further than a denial of the fact that such representations were ever made. The representations were affirmed on the one hand by the appellees and denied on the other in toto by the appellant.

If there had been evidence to the effect that some representations were made and were couched in such language as would induce the belief that it was intended as a mere expression of opinion, or that it authorized a court or a jury to give it only that effect, then the appellant would have been entitled to have the question as to whether it was a mere expression of opinion, and one upon which the appellees would not be justified in relying, submitted to the jury. But, as said before, there is no qualification in the evidence as to the appellees' version as to what was stated, other than an express and total denial by the appellant that any such statement was ever made.

The twelfth assignment of error is somewhat obscure. There is no proposition submitted under it. It is difficult to determine from this assignment whether the appellant is contending that it would be entitled to a charge submitting the issue of damages in its favor that may have resulted by reason of the detention of the press prior to the 22d day of August, 1900, the time determined by the judgment of the Federal Court that the appellants were entitled to the possession of the press. If it is intended to mean that the appellant was entitled to the possession of the press prior to the 22d day of August without reimbursing the appellees the freight charges they paid out in order to obtain the press, provided the appellees' theory is correct on the issue of fraud, then we are of the opinion that the assignment presents no reversible error. But if the contention is to present the point that, although the plaintiffs may have had a cause of action for the damages sustained by reason of the fraud, that that would not have justified a detention after the 22d day of August, 1900, then we are inclined to agree with the contention of appellant, which will be later noticed in disposing of the eleventh assignment of error.

The thirteenth assignment of error raises a question of fact which will be considered upon another trial. The same may be said of the fourteenth assignment of error, and we would suggest that upon another trial of the case all of the issues raised in the pleadings by either party be disposed of, so as to obviate any question or doubt as to the judgment's being final.

We reverse and remand the case on the eleventh assignment of error.

The court after presenting to the jury the plaintiffs' theory of the case then in effect told them that if they found against the plaintiffs upon the issue of fraud, they would next consider the right of the defendant on its cross-action against the plaintiffs. In the previous controversy between the appellant and the appellees in the case decided by the United States Circuit Court, all claims for damages which the pleadings of the parties in that case presented, and which are similar to the items of damages set up by each of the parties in this case, were disposed of by the judgment of the Federal Court without prejudice to the rights of either party; but the judgment of that court determined the right of the possession of the press in controversy, and it contained an express recital to the effect that the appellant was entitled not only to the press at the time that that judgment was rendered, but continuously since the 22d day of August, 1900. That is an express adjudication that after that time the appellees were no longer entitled to the possession of the press. No other effect can be given that declaration of the judgment. The mere fact that the issues with reference to damages were withdrawn would not preclude the right of the appellees, if they so desired, to set up in the case pending in the Federal Court any right they may have had as to the possession of the press since August 22, 1900. And the conclusion is irresistible, from the judgment rendered in that case, that whatever right to possession they may have been entitled to was adjudicated and determined by that judgment. If the plaintiffs had a cause of action for deceit and fraud perpetrated upon them by reason of the false representations, and if it could be admitted that they were entitled to retain possession of the press until the freight charges were paid, that right would not continue to exist for a longer time than that determined and adjudicated by a court of competent jurisdiction that had the power to pass upon the right of possession. And the court having acted in that matter, it settled the question that Heierman & Bro.'s possession after August 22, 1900, was unlawful and unauthorized. While the appellees would be entitled to recover whatever damages they may have sustained growing out of the false and fraudulent representations, still the appellant would be entitled to recover the reasonable rental value of the use of the press since the time it was determined and adjudicated by the Federal Court that they were entitled to possession thereof; and a judgment in favor of the appellees on the ground of fraud would not preclude the right of the appellant to have submitted to the jury the issue of damages presented by their pleading that arose from the wrongful detention of the press by the appellees since the 22d day of August, 1900. We understand the charge of the court to practically deny the right of the jury to consider this element of damages, in the event that they should find for the plaintiffs on the issue of fraud; and for the error in the charge in this respect, the judgment is reversed and the cause remanded.

*Reversed and remanded.*